**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Fatemeh Tabatabaeifar,

Petitioner,

v.

Kika Scott, et al.,

Respondents.

No. CV-25-01238-PHX-GMS (MTM)

**ORDER**

Pending before the Court is Petitioner Fatemeh Tabatabaeifar's Motion for Temporary Restraining Order and Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65 (Doc. 8). On April 30, 2025, the Court held oral argument on the Motion. For the reasons below, on the record presently before the Court, the Motion is granted.

## BACKGROUND

Petitioner is a citizen of Iran. In February 2025, Petitioner entered the United States and was detained at a U.S. Immigration and Customs Enforcement ("ICE") facility in Eloy, Arizona. (Doc. 8 at 3). At oral argument, counsel for Respondents indicated that Petitioner is currently being held in immigration detention there. While in custody, Petitioner made various requests for asylum to ICE and United States Citizenship and Immigration Services ("USCIS") officers in February and March of 2025. (*Id.*).

In mid-March 2025, a USCIS asylum officer assessed Petitioner's claim under the Convention Against Torture ("CAT"). (*Id.* at 4). On March 21, 2025, the USCIS officer determined that Petitioner failed to establish that it was more likely than not that she would

be tortured in Iran. (*Id*.). On April 4, 2025, upon learning about the negative CAT assessment, Petitioner's attorney requested that Petitioner's case be referred to an immigration judge for review. (*Id*.). On April 8, 2025, an asylum officer notified Petitioner of her negative CAT assessment, and Petitioner requested asylum and asked the asylum officer to refer her case to an immigration judge. (Doc. 8 at 4).

On April 11, 2025, Petitioner's attorney emailed Respondents and stated that the asylum officer who notified Petitioner of her CAT assessment results failed to notify Petitioner of her right to request review by an immigration judge and failed to provide Petitioner the Form I-869 to request review of the decision. (*Id*.). On April 13, 2025, Respondents notified Petitioner's attorney that Petitioner was "processed under Expedited Removal – Section 212(f) and received a negative CAT determination" and that Petitioner was not entitled to an immigration judge's review of that decision. (*Id*. at 5).

On April 14, 2025, Petitioner filed a Petition for Writ of Mandamus (Doc. 1) in this Court. On April 16, 2025, Petitioner filed a Motion for Temporary Restraining Order and Preliminary Injunction Pursuant to Federal Rule of Civil Procedure 65 (Doc. 8).

## DISCUSSION

### I. Jurisdiction

The Court must first reach the threshold question whether it has jurisdiction to hear Petitioner's claims. At oral argument, Respondents invoked two reasons why they believe the Court lacks jurisdiction to hear Petitioner's claims. First, Respondents alleged Petitioner was determined to be inadmissible under 8 U.S.C. § 1182(f) and the Presidential Proclamation "Guaranteeing the States Protection Against Invasion" issued by President Donald Trump pursuant to Section 1182(f) on January 20, 2025. Section 2 of that proclamation includes a restriction on noncitizens' ability to seek asylum under 8 U.S.C. § 1158. But, although Section 1158 affords the President some discretion to expedite the removal of aliens, it does not mention asylum, and counsel for the United States was unable to articulate any other authority other than Article II of the Constitution which, the government argues, provides the President authority to ban a request for asylum by a non-

citizen present in the United States. Such an argument is not persuasive. It is true that Article II grants the President executive power. In general, however, the legislative power, and the power "to establish an uniform rule of naturalization" belongs to Congress. *See* U.S. Const. art. I, § 8, cl. 4. Respondents have not articulated any authority for the proposition that Congress delegated the power to ban asylum to the President or that the President maintains that power through the executive role.

Indeed, the only authority that the Court can find is contrary to that proposition. The United States District for the District of Columbia's decision in *O.A. v. Trump* supports the conclusion that the President lacks the authority to preclude noncitizens who reach the United States from seeking asylum. 404 F. Supp. 3d 109 (D.D.C. 2019), *appeal dismissed sub nom*, *O.A. v. Biden*, No 19-5272, 2023 WL 7228024 (D.C. Cir. Nov. 1, 2023). In fact, the D.C. Court specifically held that a prior proclamation under Section 212(f) "was not sufficient to override a statutory mandate permitting all [noncitizens] present in the United States to apply for asylum," regardless of their manner of entry; or to "shift the congressional assignment of authority … from [DOJ and DHS] to the President." *Id.* at 151 (citing 8 U.S.C. § 1158(a)(1) and *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952)). At this juncture, the Proclamation issued by President Trump does not prevent Petitioner from seeking asylum pursuant to 8 U.S.C. § 1182(f), particularly when Petitioner was located at least 10 miles inside the United States.

Respondents also invoked 8 U.S.C. § 1252(g), which strips the federal courts of jurisdiction to consider any claim arising from the decision of the Attorney General or his or her delegee to execute a removal order. 8 U.S.C. § 1252(g) provides that "[e]xcept as provided in this section and notwithstanding any other provision of law . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The Supreme Court clarified that Section 1252(g) does not serve as a "zipper clause" that bars judicial review of any decisions or actions that occur as part of the removal process—rather, it "applies only to

three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). The Supreme Court thus found that Section 1252(g) is not a "general jurisdiction limitation," but rather is limited to barring review of challenges to discretionary determinations. *Id.* at 482-83.

"The Ninth Circuit has held consistently that Section 1252(g) should be interpreted narrowly." *Sied v. Nielsen*, No. 17-cv-06785-LB, 2018 WL 1142202, at *21 (N.D. Cal. Mar. 2, 2018) (citing *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc)). "The focus of Section 1252(g) is to limit 'judicial constraints upon prosecutorial discretion.'" *Id.* "By contrast, Section 1252(g) does not divest courts of jurisdiction over cases that do not address prosecutorial discretion and address 'a purely legal question, which does not challenge the Attorney General's discretionary authority[.]'" *Id.*

Section 1252(g) similarly does not strip this Court of jurisdiction to hear Petitioner's claims. "The district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question—a description of the relevant law—forms the backdrop against which the Attorney General later will exercise discretionary authority." *Hovsepian*, 359 F.3d at 1155.

In light of the Court's preliminary finding that 8 U.S.C. § 1182(f) does not preclude Petitioner from seeking asylum, the processes Petitioner seeks are not discretionary but, rather, mandatory procedural protections required by law. Under these circumstances, DHS officials have no discretion whether to refer Petitioner for a credible fear determination once she expressed a fear of returning to Iran and, likewise, have no discretion to deny an immigration judge's review of her CAT determination. As such, the Court has jurisdiction to hear Petitioner's claims.

## II. Legal Standard for Injunctive Relief

Federal Rule of Civil Procedure 65 governs temporary restraining orders and preliminary injunctions. *See* Fed. R. Civ. P. 65. A preliminary injunction enjoins conduct pending a trial on the merits. *See* Fed. R. Civ. P. 65(a). A temporary restraining order

enjoins conduct pending a hearing on a preliminary injunction. *See* Fed. R. Civ. P. 65(b). "The standard for issuing a temporary restraining order is the same as the standard for issuing a preliminary injunction." *Seneca v. Arizona*, No. CV 03-1350, 2003 WL 27384066, at *3 (D. Ariz. July 25, 2023).

"A party seeking injunctive relief under Rule 65 of the Federal Rules of Civil Procedure must show that: (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest." *Patel-Hasmukhbhai v. Barr*, No. CV-20-01121, 2020 WL 13544980, at *2 (D. Ariz. June 8, 2020) (citing *Winter v. Nat. Res. Def. Couns., Inc.*, 555 U.S. 7, 20 (2008)). Injunctive relief is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). The movant must make "a certain threshold showing . . . on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011).

## III. Analysis

Petitioner seeks a temporary restraining order "enjoining and prohibiting [Respondents], their agents, employees, and assigns from executing or enforcing any order of removal or deportation of [Petitioner], and from taking any action to effectuate her removal from the United States, until such time as the Immigration Judge has issued a final decision on her case." (Doc. 8 at 11).

### a. Likelihood of Success

The Court first considers whether Petitioner is likely to succeed on the merits. In her Petition for Writ of Mandamus, Petitioner brings the following claims: (1) Failure of Respondents to send Petitioner's case to immigration court in violation of 8 C.F.R. § 208.30; (2) Failure of Respondents to assess Petitioner for her asylum claim in violation of 8 U.S.C. § 1225(b)(1)(B)(iii)(III); (3) Violation of the Administrative Procedure Act; and (4) Violation of Due Process Clause of the Fifth Amendment to the United States Constitution. (Doc. 1 at 9-13).

Mandamus is an extraordinary remedy and is available to compel a federal official to perform a duty only if: "(1) the individual's claim is clear and certain; (2) the official's duty is 'ministerial and so plainly prescribed as to be free from doubt;' and (3) no other adequate remedy is available." *Azurin v. Von Raab*, 803 F.2d 993, 995 (9th Cir. 1986) (quoting *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir. 1986)).

As to Petitioner's first two claims, Petitioner provides evidence that she requested that an immigration judge review her negative CAT assessment, but Respondents refused to refer her case to an immigration judge. (Doc. 8 at 5). Petitioner cites multiple exhibits to show that she requested an immigration judge's review of her case pursuant to 8 C.F.R. § 208.30 and 8 U.S.C. § 1225(b)(1)(B)(iii)(III). (Doc. 1 at 8). Petitioner argues that Respondents' "failure to conduct an interview to make a credible fear determination or to refer [Petitioner] to an immigration judge, despite her multiple requests, violates federal regulations under 8 C.F.R. § 208.30 and [federal statute under] 8 U.S.C. § 1225(b)(1)(B)(iii)(III)." (*Id.* at 6).

8 C.F.R. § 208.30 provides that:

> "If an alien is found not to have a credible fear of persecution or torture, the asylum officer shall provide the alien with a written notice of decision and issue the alien a record of the credible fear determination, including copies of the asylum officer's notes, the summary of the material facts, and other materials upon which the determination was based. The asylum officer shall inquire whether the alien wishes to have an immigration judge review the negative decision, which shall include an opportunity for the alien to be heard and questioned by the immigration judge."

8 U.S.C. § 1225(b)(1)(B)(iii)(III) provides that:

> "The Attorney General shall provide by regulation and upon the alien's request for prompt review by an immigration judge of a determination under subclause (I) that the alien does not have a credible fear of persecution. Such review shall include an opportunity for the alien to be heard and questioned by the

> immigration judge, either in person or by telephonic or video connection."

Given the unambiguous language of 8 C.F.R. § 208.30 and 8 U.S.C. § 1225(b)(1)(B)(iii)(III) and the evidence reflecting Petitioner's unambiguous requests for referral for a credible fear determination, Petitioner has demonstrated her "claim is clear and certain." *See Azurin*, 803 F.2d at 995. Under 8 C.F.R. § 208.30 and 8 U.S.C. § 1225(b)(1)(B)(iii)(III), Respondent's "duty is ministerial and so plainly prescribed as to be free from doubt." *See id.* Aside from referring Petitioner's case to an immigration judge for review, "no other adequate remedy is available," *see id.*, as counsel for United States has stated during oral argument on April 30, 2025, that no additional procedural steps need occur before Petitioner's deportation.

Therefore, Petitioner has demonstrated a likelihood of success on the merits for her first two claims. Since Petitioner has demonstrated a likelihood of success on the merits for her first two claims, the Court need not consider Petitioner's third and fourth claims in this Motion.

**b. Irreparable Harm**

The Court next considers whether Petitioner is likely to suffer irreparable harm in the absence of injunctive relief. Petitioner has sufficiently established that she is likely to suffer irreparable harm in the absence of injunctive relief because "her removal could occur at any time, rendering her legal claims moot and placing her in immediate danger." (Doc. 8 at 8). "[A] noncitizen must show that there is a reason specific to his or her case . . . that removal would inflict irreparable harm—for example, that removal would effectively prevent her from pursuing her petition for review." *Leiva-Perez*, 640 F.3d at 969. In communications between Petitioner's attorney and Respondents, ICE Deportation Officer Shawn Napolitano wrote that Petitioner was "being processed as an Expedited Removal under INA 212(f)," (Doc. 1-4 at 4), indicating Respondents' intent to remove Petitioner from the United States, possibly before this Court can review her petition. If Respondents were to deport Petitioner, Petitioner would no longer be able to pursue the adjudication of

her asylum claim, which "would effectively prevent her from pursuing her petition for review." *See Leiva-Perez*, 640 F.3d at 969. Indeed, at the oral argument, counsel for the United States asserted that Petitioner's deportation may proceed at any time as no additional procedural steps need occur. Further, counsel for the United States asserted no guarantee that Petitioner would not be deported within the next week. As Petitioner has shown that Respondents may deport her imminently, and her deportation would prevent her from pursuing her asylum claim, Petitioner has sufficiently shown a likelihood of irreparable harm. *See Patel-Hasmukhbhai v. Barr*, No. CV-20-01121, 2020 WL 13544980, at *3 (D. Ariz. June 8, 2020) ("Because removal would deprive Petitioner of the relief she seeks—asylum in the United States—she has shown that it is probable that she would suffer irreparable harm absent a stay."); *see also Ali v. Ashcroft*, No. C02-2304P, 2022 WL 35650203, at *1 (W.D. Wash. Nov. 14, 2002) ("Petitioners face an immediate risk of irreparable harm, as Respondents have told Petitioners that they are to be removed to Somalia imminently.").

**c. Balance of Equities and Public Interest**

The Court next considers whether the balance of equities tips in Petitioner's favor and whether injunctive relief is in the public interest. These "third and fourth factors—assessing how a stay would affect the opposing party and the interest of the public—[] merge where the government is the opposing party." *Leiva-Perez*, 640 F.3d at 970. Courts "consider the public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm," but also consider the "public interest in prompt execution of removal orders, which may be heightened in certain circumstances, such as those involving particularly dangerous noncitizens." *Id.* (citing *Andreiu v. Ashcroft*, 253 F.3d 477, 484 (9th Cir. 2001)). The Court must consider whether the public interest favors the petitioner. *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992).

As discussed above, in the absence of a temporary restraining order, Petitioner risks removal from the United States to a country in which Petitioner asserts that she is likely to

be tortured or otherwise persecuted. (*See* Doc. 8 at 8-9). There is no evidence in the record that suggests Petitioner poses a threat to the public. Further, "the public has a strong interest in ensuring that the nation's immigration laws are robustly—and fairly—enforced." *Inland Empire—Immigrant Youth Collective v. Nielsen*, No. EDCV 17-2048, 2018 WL 1061408, at *21 (C.D. Cal. Feb. 26, 2018). Thus, the equities tip in Petitioner's favor and injunctive relief is in the public's interest.

**d. Conclusion**

At this stage of the proceedings, Petitioner has demonstrated that she has a likelihood of success on the merits for her mandamus claims, irreparable harm is probable absent a temporary restraining order, the balance of hardships tips in her favor, and injunctive relief is in the public's interest. Accordingly, Petitioner's Motion for a Temporary Restraining Order (Doc. 8) is granted.

**IT IS THEREFORE ORDERED** that Petitioner's Motion for a Temporary Restraining Order (Doc. 8) is **granted**. Respondents are enjoined from removing Petitioner from her current location in Eloy, Arizona, for 14 days pending further briefing by the parties and the Court's consideration of Petitioner's request for a preliminary injunction.

**IT IS FURTHER ORDERED** that Respondents shall file a response to the Motion for Preliminary Injunction (Doc. 8) by **May 5, 2025**, and Petitioner shall file a reply by **May 8, 2025**.

**IT IS FURTHER ORDERED** setting oral argument via Zoom on the Motion for Preliminary Injunction (Doc. 8) at **1:30 p.m. (Arizona Time) on May 9, 2025**. The Court will email the Zoom connection information to counsel prior to the oral argument date.

Dated this 1st day of May, 2025.

G. Murray Snow
Senior United States District Judge