John Nicolas Albukerk

Albukerk & Associates
1111 Westgate St.
Oak Park, IL 60301
State Bar No. 6218232
E-mail: nick.albukerk@gmail.com
Tel: (773)-847-2600

Attorney for the Petitioner

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Fatemeh Tabatabaeifar | ) | No. CV-25-01238-PHX-GMS (MTM) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **PETITIONER'S REPLY TO** |
| | ) | **RESPONDENTS' OPPOSITION TO** |
| Kika Scott, et al., | ) | **PETITIONER'S MOTION FOR** |
| | ) | **NATIONWIDE TEMPORARY** |
| | ) | **RESTRAINING ORDER AND REQUEST** |
| | ) | **FOR A NATIONWIDE INJUNCTION** |
| | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

DATED 22nd day of June, 2025

_____/s/John Nicolas Albukerk_____

John Nicolas Albukerk

Attorney for Plaintiff Fatemeh Tabatabaeifar

## **INTRODUCTION**

This Court is able to rule on the scope of preliminary relief in a fast-evolving legal landscape.

By June 30, 2025, the Supreme Court is expected to issue a decision that may significantly limit the availability of nationwide injunctions in cases involving immigration and executive authority. *See Trump v. CASA, Inc*., No. 24A884 (U.S. argued May 15, 2025). In addition, Petitioners note that there is a pending nationwide class action, fully briefed and currently before the U.S. District Court for the District of Columbia which may soon resolve many of the national legal questions implicated in this case. *See RAICES v. Noem*, No. 1:25-cv-00306 (D.D.C. Feb. 3, 2025). In anticipation of these rulings, Petitioner respectfully request that this Court withhold entry of any nationwide relief until the Supreme Court's forthcoming rulings as well as the final decision by the District court of D.C. which is considering the Class Action lawsuit.

Nonetheless, Respondents ask this Court to deny relief, relying on several jurisdictional arguments. Respondents case rests on claims that (1) Petitioner's claims are moot due to her having already received a credible fear interview; (2) Even if not moot, Petitioner cannot obtain class-wide relief where no class has been certified and would violate equitable and constitutional principles; (3) Petitioner's requested nationwide injunction is doubly barred due to only being able to be brought in the U.S. District Court for the District of Columbia under 8 U.S.C. §1252(e)(3) and due to §1252(f) precluding injunctive relief to non-parties with respect to expedited removals. *See* ECF No. 47 at 2-3.

In the interim, however, Petitioners request a temporary restraining order (TRO) and Preliminary Injunction limited to the District of Arizona**.** Petitioners also ask that the Court withhold any ruling until July 1, 2025, at which time the potential implications of the Supreme Court's decision will be known.

In response to Respondents, Petitioner argues that jurisdictional objections <u>fail</u> for several reasons: (1) Petitioner's case was not simply seeking a credible fear interview but to have her asylum claim adjudicated, which is still to be decided by the immigration judge presiding over her removal proceeding and therefore would not be moot; (2) Nationwide injunctive/Districtwide

injunctive relief is permitted by existing court precedent to the extent that it is necessary to give petitioner (and others similarly situated) their full rights; and (3) This Court retains jurisdiction since Petitioner's request for the nationwide injunction was requested prior to this Court issuing its Order (ECF No. 37) on May 14, 2025, and this Court did not then rule on the request, allowing Petitioner to renew its request and allow Respondents an opportunity to brief the issue.

Further, Petitioner stands by the availability and appropriateness of a nationwide injunction as fully explained in her Motion for Nationwide Temporary Restraining Order and Request for Nationwide Injunction. *See* ECF No. 39, filed June 13, 2025. In this Reply, Petitioner responds specifically to the arguments raised in Defendants' Opposition to Motion for Temporary Restraining Order and Preliminary Injunction. *See* ECF No. 47, filed June 19, 2025.

## <u>ARGUMENT</u>

### I.    Article III Standing and Equitable Principles Support Ongoing Jurisdiction

This section responds to Respondents' argument in Section I.A of their Opposition brief regarding the Court's lack of jurisdiction. As explained below, Petitioner has Article III standing, and equitable principles support this Court's continued jurisdiction and the granting of broader relief.

### A.  Petitioner Has Article III Standing

Article III limits the federal judicial power to the adjudication of "cases" and "controversies." U.S. CONST. art. III, § 2. "One of the essential elements of a legal case or controversy is that the plaintiff have standing to sue." *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018).

To establish standing, a plaintiff must show (1) an injury in fact that is concrete and particularized, actual or imminent (not conjectural or hypothetical; (2) that the injury is fairly traceable to the defendant's challenged conduct, and (3) that the injury is fairly traceable to the challenged action of the defendant, and that it is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330,338 (2016); *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992).

At this preliminary stage, Petitioner may rely on the allegations in her complaint and evidence submitted with her TRO motion. *See Washington v. Trump*, 847 F.3d 1151, 1159 (9th Cir. 2017). A plaintiff "need only establish a risk or threat of injury to satisfy the actual injury requirement." *Harris v. Cnty of L.A*., 366 F.3d 754, 762 (9th Cir. 2004).

Petitioner's limited interim relief does not deprive her of standing. "[A] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Loc*. 1000, 567 U.S. 298, 307 (2012).

Voluntary cessation of unlawful conduct does not moot a case unless the defendant shows the conduct cannot reasonably be expected to recur. *Friends of Earth, Inc. v. Laidlaw Env't Servs., Inc*., 528 U.S. 167,189 (2000); *Fikre v. FBI*, 904 F.3d 1033, 1037 (9th Cir. 2018). Moreover, a plaintiff may maintain standing where the conduct is "capable of repetition, yet evading review." *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016); *Roe v. Wade*, 410 U.S. 113, 125 (1973).

Petitioner satisfies this standard. This court has already decided that Petitioner has standing to bring this lawsuit. At this point, she has been given the credible fear interview and has been sent to an immigration judge for review of her asylum request. However, there is no indication yet that the immigration court will entertain her asylum request due to prohibitions in Proclamation 10888, or only allow her to proceed with a CAT claim. Therefore, the controversy is not moot.

Respondents do not grasp the crux of Petitioners claims in this case. The credible fear interview was requested because Petitioner sought Asylum. ECF No. 37 at 1-20. Now that the credible fear interview has been granted and her case has been sent to the immigration court for removal proceedings, the immigration judge is faced with deciding whether to acknowledge her asylum claim or find that Proclamation 10888 precludes it from hearing the claim.

The immigration court has not decided on Petitioner's asylum case in her removal proceeding. It is so far not known whether it will even acknowledge the asylum claim or whether it will find that it cannot hear the asylum case under the Proclamation. To the extent that this decision is still pending, Petitioner still has a live case or controversy. According to precedent provided by Respondents themselves in their Opposition Response, a live controversy is necessary for Article III jurisdiction. *Brach v. Newsom*, 38 F.4th 6, 11 (9th Cir. 2022) (en banc). ECF No. 51 at 10.

As acknowledged by this Court in its own Order filed on May 14, 2025, Petitioner has an interest in the resolution of her asylum claim and there is a risk that the immigration judge, (who as a member of the Executive Office for Immigration Review, would come under the U.S. Department of Justice, and therefore would be bound to uphold presidential proclamations) may decide not to hear the asylum case at all, as per the Proclamation. As this Court itself found in its May 14, 2025 Order, both Respondents and their agents and assigns, were enjoined from removing Petitioner from the U.S. prior to a complete assessment of her asylum claim, including not just a credible fear determination but also an immigration judge's review, per 8 C.F.R. §208.30 and 8 U.S.C. §1225(b)(1)(B)(iii)(III) of the INA. ECF No. 37 at 20. Until that review is complete, this controversy in this case remains live for purposes of standing and as a corollary, this Court still retains jurisdiction over this matter.

Additionally, the "capable of repetition, yet evading review" exception applies. Respondents argue that Petitioner has received the relief initially sought, rendering the case moot. However, even if this were the case, Petitioner's claims fall squarely within the well-established exception to mootness for injuries that are "capable of repetition, yet evading review." This exception applies when (1) the challenged action is of too short a duration to be fully litigated before it ceases, and (2) there is a reasonable expectation that the same party will be subject to the same action again. *Alaska Ctr. for Env't v. U.S. Forest Serv.*, 189 F.3d 851, 855 (9th Cir. 1999).

Both prongs are met here. First, the expedited nature of proceedings under Presidential Proclamation 10888, combined with DHS's use of expedited removal, and in this case, the grant of the credible fear interview, creates a process that often concludes within days, leaving insufficient time for judicial review. *See Am.-Arab Anti-Discrimination Comm. v. Thornburgh*, 970 F.2d 501, 506 (9th Cir. 1991) (holding that "removal orders that may be carried out before the legality of their issuance can be reviewed" meet the "evading review" prong). The government can essentially grant limited relief to a handful of litigants while continuing to violate the rights of the vast majority of similarly situated individuals.

Second, there is a reasonable expectation that Petitioner—and similarly situated individuals—may again face the same allegedly unlawful treatment. Ms. Tabatabaeifar remains in removal proceedings, and the immigration court has not yet agreed to hear her asylum claim on the merits.

Accordingly, the process that led to the deprivation of her statutory rights remains active and unresolved. Moreover, given the ongoing implementation of the Proclamation, future injury to her or others similarly situated is likely. *See Doe v. Harris*, 772 F.3d 563, 570–71 (9th Cir. 2014) (noting that capable-of-repetition analysis does not require certainty of recurrence, only a "reasonable expectation" of re-injury).

### B.  The Court Retains Equitable Authority to Issue Relief under Rule 65

Respondents' argument that nationwide injunctive relief is foreclosed by Constitutional constraints and statutory limits is not supported by existing case law.

First, partial or interim relief does not preclude a court from exercising its equitable authority under Federal Rule of Civil Procedure 65 to prevent further injury. *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("The injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."). The Ninth Circuit has affirmed the appropriateness of issuing injunctive relief that extends beyond named plaintiffs. *See Bresgal v. Brock*, 843 F.2d 1163, 1170–71 (9th Cir. 1987) (approving injunctive relief extending beyond the named plaintiffs where necessary to provide complete relief).

Furthermore, the nature of the alleged statutory violations—systemic failure to follow statuary procedures under § 1225—warrants a districtwide or nationwide injunction to ensure that the government adheres to the statutory framework for all similarly situated individuals within this jurisdiction. *See Innovation Law Lab v. Wolf*, 951 F.3d 1073, 1094 (9th Cir. 2020) (holding that districtwide injunctions are appropriate where necessary to provide complete relief and prevent ongoing harm), vacated on other grounds, 141 S. Ct. 2842 (2021).

Nationwide injunctions have been permitted "when necessary to give Plaintiffs a full expression of their rights." *City and County of San Francisco v. Trump*, 897 F.3d 1225, 1244 (9th Cir.) (citing *Hawaii v. Trump*, 878 F.3d 662, 701 (9th Cir. 2017) (per curium), reversed on other grounds by *Trump v. Hawaii*, 585 U.S._, 138 S.Ct. 2392). An injunction is not necessarily made overbroad by extending a benefit or protection to persons other than prevailing parties in a lawsuit if such breadth is necessary to give prevailing parties the relief to which they are entitled. *Id*. at 1244 (citing *Bresgal v. Brock*, 843 F.2d 1163, 1170-71 (9th Cir.  1987)).

The Ninth Circuit has affirmed the appropriateness of broad relief in the interest of ensuring uniformity in immigration enforcement and to avoid fragmented legal regimes. See *Washington v. Trump*, 847 F.3d 1151, 1158 (9th Cir. 2017); see also *Hawaii v. Trump*, 878 F.3d 662, 701 (9th Cir. 2017). The Ninth Circuit in *Washington* quoted the Fifth Circuit as explaining that "such a fragmented immigration policy would run afoul of the constitutional and statutory requirement for uniform immigration law and policy." *Washington*, 847 F.3d at 1166-67 (citing *Texas v. United States*, 809 F.3d 134, 187-188 (5th Cir. 2015)).

This Court itself has found in this case that there is a likelihood that the Proclamation is not a valid exercise of the President's statutory authority under Sections 1182(f) and 1185(a) of the INA. *See* ECF No. 37 at 12. It also finds that it is not likely that the Proclamation is a valid exercise of the President's constitutional authority under Articles II and IV of the U.S. Constitution. *See* ECF No. 37 at 13. It has ruled that although the exclusion of aliens is inherent in the Executive power to control the foreign affairs of the U.S. and that it is not the role of the judiciary to probe and test the justifications of immigration policies (citing earlier precedents), courts may nevertheless review the political branches' actions in order to determine whether they exceed the constitutional or statutory scope of their authority. *Id*. (citing *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950); *Trump v. Hawaii*, 585 U.S. 667, 704 (2018); and *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 756 (9th Cir. 2018)).

This Court very clearly sets forth in its May 14, 2025 Order that the power to establish a uniform Rule of Naturalization" is a legislative power belonging to Congress, as per the U.S. Constitution. ECF No. 37 at 13 (*see also* U.S. Const. art. I, §8, cl. 4). With regards to Article IV of the U.S. Constitution[1], this Court found that the present case arose in the context of a private litigant (Petitioner) asserting her rights as authorized by an Act of Congress which the President seeks to unilaterally cancel by claiming that an invasion occurred under Article IV. ECF No. 37 at 14.

This Court stated that under these circumstances, the judiciary may review whether the President's assumption of the authority to cancel legislative rights is correct. ECF No. 37 at 14. It made note of the fact that Petitioner was requesting an asylum claim because of the express

---

[1] "The United States shall guarantee to every State in this Union a Republican Form of Government, and shall protect each of them against Invasion." U.S. Const. art. IV, §4.

authorization of Congress and that because Congress expressly authorized her right to do so, the Court could not conclude that Petitioner was an "invader" under Article IV of the U.S. Constitution. ECF No. 37 at 15. It also made note of the fact that courts have held that the Invasion Clause of Article IV was not intended to be used to address an influx of unauthorized aliens. ECF No. 37 at 15 (citing *State of California v. United States*, 104 F.3d 1086, 1091 (9th Cir. 1997)). Overall, this Court recognized that there was a likelihood of Presidential Proclamation 10888 not being a valid exercise of the President's constitutional authority under several sources.

In this case, Petitioner's case is in removal proceedings before an immigration judge, where her case rests on a decision about her asylum claim, whose resolution is the crux of her case. The credible fear interview was but one step towards this goal, it was not the substance of the case. There is a risk that the immigration judge may decide under the Proclamation to not hear Petitioner's asylum claim. To the extent that this is still a risk and to the extent that this Court itself recognizes there is a likelihood of the Proclamation not being constitutionally valid, it would be essential for this Court to grant Petitioner's request for a nationwide or districtwide injunction in order to protect the full expression of her rights so that they are not abridged by any application of this Proclamation. The relief she seeks is to make an asylum claim as is her express right under §1158 of the INA 8 U.S.C. §1158. The only way she can get this relief is through a nation or district wide injunction preventing the enforcement of Proclamation 10888, to the extent that it still poses a threat to her asylum claim being considered by the immigration judge. Therefore, existing court precedent permits nationwide or districtwide injunctive relief in order to protect the full rights of Petitioner and those similarly situated.

Petitioner's claims remain justiciable because there is a reasonable expectation that Petitioner herself may again face the same statutory deprivation under the challenged policy, particularly given the unresolved status of her asylum claim in ongoing removal proceedings. The Court also has ongoing equitable authority to issue appropriate relief to prevent further statutory violations to those similarly situated. The government's contention that this case is moot is both factually inaccurate and legally unsupportable under Ninth Circuit and Supreme Court precedent.

## II.    Statutory Interpretation Confirms Jurisdiction and Supports Relief

### A.  Section 1252(f)(1) Does Not Bar Relief Where Petitioner Seeks to Enforce, Not Enjoin, Statutory Procedures

Respondents argue that 8 U.S.C. § 1252(f)(1) divests this Court of authority to enter injunctive relief relating to the implementation of 8 U.S.C. § 1225(b). That argument mischaracterizes both the statute and the relief sought. Section 1252(f)(1) provides that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of" certain provisions of the INA, including § 1225(b), "other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." 8 U.S.C. § 1252(f)(1).

However, the injunctive relief sought here does not challenge the operation or validity of § 1225(b); rather, it seeks to compel the government to follow the statute's express terms— namely, to conduct credible fear interviews in accordance with 8 U.S.C. § 1225(b)(1)(A)–(B) and 8 C.F.R. § 208.30. This type of relief—requiring the government to comply with its nondiscretionary, statutorily mandated procedures—does not implicate the jurisdictional bar of § 1252(f)(1). *See, e.g., Gonzalez v. ICE*, 975 F.3d 788, 811–12 (9th Cir. 2020) ("An injunction that simply requires officials to comply with existing law does not enjoin or restrain the operation of a statute."); *see also Hamama v. Adducci*, 912 F.3d 869, 879 (6th Cir. 2018) (distinguishing injunctions that enforce statutory compliance from those that restrain statutory operation).

Moreover, courts have recognized that § 1252(f)(1) does not bar injunctive relief where plaintiffs seek to vindicate mandatory procedural entitlements. In *Grace v. Barr*, for example, the D.C. District Court enjoined the government's deviation from the statutory credible fear standard, and the D.C. Circuit affirmed the district court's jurisdiction to do so. *See Grace v. Barr*, 965 F.3d 883, 896–900 (D.C. Cir. 2020) (holding that systemic challenge to credible fear interview standards under § 1225(b)(1) was reviewable and not barred by 1252(f)(1)).

*Aleman Gonzalez v. Garland*, 596 U.S. 543 (2022), is distinguishable. In that case, the plaintiffs sought injunctive relief that would have categorically changed how DHS applied its detention authority under 8 U.S.C. § 1231. The Supreme Court held such an injunction fell

squarely within § 1252(f)(1)'s bar. *Id*. at 550–52. But the present motion does not ask this Court to reinterpret § 1225 or override discretionary judgments; rather, it asks the Court to require adherence to the mandatory asylum screening framework—an obligation not subject to agency discretion. *See* 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 208.30(d) (requiring referral to an asylum officer for credible fear interviews). *Aleman Gonzalez* reaffirmed that § 1252(f)(1) permits injunctions directed at individual aliens, and that "individual relief" remains available. 596 U.S. at 555–56.

Thus, because Petitioner seeks enforcement of, not exemption from, § 1225(b)(1), and because the requested TRO would only apply to individuals in this District facing the same procedural deprivation, § 1252(f)(1) does not strip this Court of jurisdiction.

## B.  Section 1252(e)(3) Does Not Bar Relief Because Petitioner Does Not Challenge the Legality of Expedited Removal

Respondents also invoke 8 U.S.C. § 1252(e)(3), which limits facial challenges to the legality of expedited removal procedures to the U.S. District Court for the District of Columbia. But Petitioner does not bring a facial challenge to the expedited removal statute. Rather, she seeks enforcement of mandatory statutory procedures—namely, the government's obligation to provide credible fear interviews under 8 U.S.C. § 1225(b)(1) and implementing regulations at 8 C.F.R. § 208.30. Courts have distinguished such claims from those governed by § 1252(e)(3)'s venue limitation. *See Grace v. Barr*, 965 F.3d 883, 897–900 (D.C. Cir. 2020) (holding that § 1252(e)(3) does not preclude judicial review of claims that the government failed to comply with statutory credible fear standards). Because Petitioner challenges the government's failure to follow binding statutory procedures—not the validity of the expedited removal statute itself— § 1252(e)(3) is inapplicable here.

## III.    Petitioner Can Satisfy the Prerequisites for Injunctive Relief.

This Court has already issued a TRO and Preliminary Injunction for Petitioner and this issue has been argued and decided before.

### a. Petitioner May Seek Districtwide Relief on Behalf of Similarly Situated Individuals in Arizona

Petitioner may seek injunctive relief that extends to similarly situated individuals within the District of Arizona because courts possess broad equitable authority to fashion remedies that prevent ongoing legal violations and provide complete relief. *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). This authority includes the power to issue relief beyond the named plaintiff where the nature of the violation makes such relief necessary to fully redress the harm. *Id.*; *Bresgal v. Brock*, 843 F.2d 1163, 1171 (9th Cir. 1987). In the immigration context, the Ninth Circuit has held that a district court may issue geographically limited injunctions to prevent systemic violations of federal law affecting similarly situated individuals, even absent class certification. *Innovation Law Lab v. Wolf*, 951 F.3d 1073, 1094 (9th Cir. 2020), vacated as moot, 141 S. Ct. 2842 (2021). Where relief to the individual plaintiff is inextricably tied to correcting unlawful government practices that also affect others in the same jurisdiction, the court may extend equitable relief accordingly. *Bresgal*, 843 F.2d at 1171.

Petitioner's experience exemplifies the systemic violations occurring under the government's implementation of Presidential Proclamation 10888 within the District of Arizona. Like others similarly situated, Petitioner was processed under expedited removal procedures without the statutory safeguards mandated by 8 U.S.C. § 1225(b)(1), including access to a meaningful credible fear interview and referral to an immigration judge. The government's failure to follow these procedures is not isolated to her case but reflects a widespread pattern impacting asylum seekers in this District. Because complete relief for Petitioner requires correction of these systemic failures—and because denying broader relief would allow the government to continue violating statutory rights of others in the same posture—the Court may and should extend equitable relief districtwide. *See Bresgal*, 843 F.2d at 1171; *Innovation Law Lab*, 951 F.3d at 1094. The requested injunction would ensure that similarly situated individuals in Arizona are not unlawfully removed without the opportunity for asylum screening to which they are entitled under federal law.

### IV.    Localized and Systemic Harm Justifies Districtwide Relief

Petitioner's requested relief is not only nationwide but could also be limited to the District of Arizona. This Court can address the statewide application of the Proclamation that systemically deprive eligible asylum seekers of required statutory procedures.

Courts have recognized that districtwide injunctions may be appropriate to prevent systemic harm occurring within a court's territorial jurisdiction. *See Innovation Law Lab v. Wolf*, 951 F.3d 1073, 1094–95 (9th Cir. 2020), vacated as moot, 141 S. Ct. 2842 (2021) (approving districtwide injunction where plaintiffs demonstrated that asylum seekers in the Southern District of California were being unlawfully returned to Mexico without access to statutorily mandated procedures). As in *Innovation Law Lab*, the government's implementation of the Proclamation in Arizona has resulted in consistent, systemic failure to adhere to mandatory screening requirements under 8 U.S.C. § 1225(b)(1) and 8 C.F.R. § 208.30. Asylum applicants in Arizona are being turned away or removed without credible fear interviews or asylum referrals, in direct contravention of the statutory scheme.

The Ninth Circuit has held that "[w]here relief to the individual plaintiff would necessarily require relief to others beyond the named plaintiff, courts may issue broader injunctions without class certification." *Bresgal v. Brock*, 843 F.2d 1163, 1171 (9th Cir. 1987). Relief limited to Ms. Tabatabaeifar would not address the same systemic procedural violations affecting other asylum seekers in the district, nor would it prevent irreparable harm to future petitioners who face imminent removal without meaningful review. Accordingly, a geographically limited injunction applying to those within the District of Arizona is warranted; pending the decision on the Nationwide injunction.

The record before the Court demonstrates ongoing violations of the asylum processing framework within this judicial district. Petitioner's experience is not unique: DHS's implementation of Proclamation 10888 has systemically stripped individuals of the statutory and regulatory protections that Congress intended to apply at the border and in removal proceedings. The credible fear screening process, codified at 8 U.S.C. § 1225(b)(1)(B) and implemented

through 8 C.F.R. § 208.30, was designed to ensure that no individual with a potential asylum claim is summarily removed without a meaningful opportunity to present their fear.

Yet under the Proclamation, as applied in this District, individuals like Petitioner are denied that screening altogether or processed under alternative mechanisms (such as direct repatriation or cursory expedited removal orders) without adequate notice or opportunity to assert their claims. *See, e.g., Grace*, 965 F.3d at 895–96 (emphasizing that the credible fear process is a necessary statutory safeguard).

The Supreme Court has recognized that where a policy affects multiple individuals in an identical manner within a jurisdiction, a district court may enjoin the unlawful practice on a localized basis, even in the absence of class certification. *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). And consistent with *Bresgal*, courts in the Ninth Circuit are permitted to craft relief that "extend[s] benefits or protections to non-parties when necessary to afford complete relief to the plaintiff." 843 F.2d at 1171.

As a final point, government data submitted to this Court confirms that since May 14, 2025, 19 asylum seekers in the District of Arizona have been processed under Proclamation 10888. *See* Gov't Index of Exhibits, Ex. 8 ¶ 4-5; Ex. 9 ¶ 4-5. Of those, 11 were repatriated without receiving the statutory protections required under 8 U.S.C. § 1225(b)(1)(B)(iii)—including a credible fear determination and review by an immigration judge. This means more than half of the asylum seekers processed under the Proclamation in Arizona were removed without mandatory screening. Nationwide, 171 individuals were processed under the Proclamation during the same period, and at least 35 were removed without the required credible fear process, approximately 20 percent. These figures underscore the systemic and ongoing nature of the statutory violations.

The high rate of unlawful removals within the District of Arizona—where 58 percent (11 of 19) of asylum seekers were denied basic procedural safeguards—warrants injunctive relief at least within the district. Moreover, the broader national trend, with 35 unlawful removals documented across multiple sectors, supports the continued need for nationwide relief to prevent irreparable harm to similarly situated individuals. This data confirms that Petitioner's experience is not isolated. The pattern of bypassing mandatory asylum procedures under Proclamation

10888 affects numerous similarly situated individuals in Arizona and across the country. Without districtwide or nationwide injunctive relief, these statutory violations will continue unabated for others who lack the means to individually litigate their claims in time to prevent removal.

Furthermore, in Arizona only 9 out of 53 individuals who received the "credible fear" interview were referred to Immigration Court from May 14th of 2025 to June 18th of 2025. At the same time, 143 out of 800 individuals nationally who received the "credible fear" interview were referred to Immigration Court. *ECF 47-1, at 49.* What happened to the remaining 42 individuals in Arizona and 657 people nationwide? Were they removed without being referred to the Immigration Judge in violation of the statute and regulations?

Thus, in light of the facts presented, including declarations, filings, and Petitioner's own experience—a districtwide TRO is necessary and appropriate to enjoin the unlawful pattern of conduct taking place within the District of Arizona.

Please note that Petitioner is not waiving her request for Nationwide injunction but invites the court to defer its ruling for a later date as discussed in Introduction part of this document.

## V.       Rule 65(a)(2) Consolidation of Preliminary and Permanent Injunction Hearings

Pursuant to Federal Rule of Civil Procedure 65(a)(2), Petitioner agrees it is appropriate for the Court to consolidate the hearing on the preliminary injunction with a final determination on the merits. The record is fully developed, and the legal issues are squarely presented. Further, the harm alleged is ongoing and not speculative. As such, consolidation would promote judicial economy, avoid unnecessary duplication, and allow the Court to resolve Petitioner's request for permanent relief without delay. *See* Fed. R. Civ. P. 65(a)(2); *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018) (noting that consolidation under Rule 65(a)(2) is appropriate where the factual record is complete and the parties have had an opportunity to be heard). Petitioner stands ready to proceed to a final ruling based on the existing record.

Therefore, to the extent that the question of whether or not to impose a nationwide injunction has not been formally ruled on pending Respondents' opportunity to brief the issue, this Court has continuing jurisdiction over this case.

**WHEREFORE**, Petitioner respectfully asks this Court to grant the following relief:

1. Decide this request after July 1, 2025, by grant a temporary restraining order and Districtwide injunction pursuant to Federal Rule of Civil Procedure 65 to enjoin the enforcement of Presidential Proclamation 10888, issued on January 20, 2025, as applied to individuals present within the territory of the United States seeking asylum, whether or not such individuals entered the United States lawfully.

2. Grant a temporary restraining order and nationwide injunction pursuant to Federal Rule of Civil Procedure 65 to enjoin the enforcement of Presidential Proclamation 10888, issued on January 20, 2025, as applied to individuals present within the territory of the United States seeking asylum, whether or not such individuals entered the United States lawfully after the United States Supreme Court's decision on June 30, 2025 in regards to Nationwide injunction and District of Columbia's District court decision about the class action lawsuit, as mentioned in Introduction, above.

3. Issue an injunction with retroactive effect to the date of the Proclamation's issuance, thereby safeguarding the rights of all affected individuals until such time as proper procedural mechanisms have taken place as required under 8 U.S.C § 1225(b)(1) and 8 C.F.R. § 208.30.

4. Order the return of individuals who were deported without proper asylum hearings under the Proclamation, ensuring that they are granted the opportunity to have their asylum claims fairly and lawfully adjudicated.

**Dated: June 22, 2025**

Respectfully submitted,

Albukerk & Associates

_/s/ Jonh Nicolas Albukerk_

John Nicolas Albukerk